CHARLES H. NORTON v. DUDLEY P. HALL.

*Promissory Note.  Principal and Surety.  Statute of Limitations. Voluntary Payment.*

Where a note payable to F, or order, was written in New Hampshire and sent to H in Vermont, who signed and returned it to F, who procured the plaintiff to indorse it as an accommodation indorser, and the court found under the circumstances of the case that said accommodation was for the benefit of both F and H, it was *held* that the liability of the plaintiff was that of surety, not that of guarantor simply.

When the note fell due, the plaintiff being unable to pay it, the bank holding it demanded additional security, and accordingly the plaintiff assigned to the bank, as collateral, certain notes for $1800 secured by mortgage, which the bank held until the plaintiff paid said note, which was more than six years after it became due. *Held*, that H having failed to pay the note when due, the plaintiff had a right to make this arrangement for time with the bank, and that H could not avail himself of the statute of limitations as defense in a suit by the plaintiff against him brought within six years from the time the plaintiff paid said note. The payment by the plaintiff was not a voluntary payment.

Where the liability of the surety has in good faith continued more than six years from the time the note became due, and payment of the note is made by him, such continued liability of the surety carries with it the relation of principal and surety, and the liability of the principal to re-imburse the surety for the money so paid by him.

GENERAL ASSUMPSIT.  The defendant pleaded the general issue and statute of limitations.  The plaintiff replied to the special plea that the cause of action did accrue within six years.  The

writ is dated September 29, 1866, and was served October 21, 1866. Trial by the court, August term, Caledonia county, 1868, STEELE, J., presiding.

. The plaintiff introduced in evidence a note, of which the following is a copy:

" Concord, July 2, 1855.

" For value received, I promise to pay Ira Foster or his order, one thousand dollars, the first day of December next, at the Mechanics' Bank, $1000. (Signed) DUDLEY P. HALL. "(Indorsed.) Demand and notice waived, IRA FOSTER.
" Demand and notice waived, C. H. NORTON.
" Demand and notice waived, ALBERT FOSTER."

The Mechanics' Bank referred to is in Concord, N. H., where the three indorsers lived when the note was given, and have ever since. The defendant lived in Vermont when the note was given, and has ever since. The plaintiff, the second indorser, paid to said bank, December 19, 1861, the balance then due on the note, which was $980.21, and it is to recover this sum, and the interest upon it since it was paid, that this suit was brought.

When this note was given, Ira Foster and Dudley P. Hall were interested together in an unsettled partnership. Foster was accustomed to send notes to Hall, and he would sign or indorse them, and the funds would be obtained at some bank, and be used in the company business, or in private business of either one, as might be agreed, and it was understood between the parties that the matter of these funds was to be left to be settled in the final adjustment of the partnership. The partnership business resulted in a failure, and is still unsettled. The note in question was written at Concord and sent to Vermont, to Hall, who signed and returned it to Ira Foster, who procured the plantiff and Albert Foster, without compensation and as an accommodation, to indorse it and draw the funds at the bank. When the note became due, Ira Foster sent a new note for the same amount to Hall, which he signed and returned to take up the note in question. The following is a copy of the new note:

" $1000. Burke, December 1, 1855.

" Four months from date, for value received I promise to pay to the order of Ira Foster, one thousand dollars, at the Mechanics' Bank, Concord, N. H. (Signed) DUDLEY P. HALL."

Norton *v.* Hall.

By the time the new note was given Hall had become satisfied that Ira Foster was owing him on the partnership account and that the note in question had been so used that it was the equitable duty of Ira Foster to pay it. He therefore declined to sign a new note, unless Ira Foster would give him a note of the same amount. Ira Foster complied with this demand, but still claimed that Hall was owing him on the partnership account. How the fact was, the court did not think it material or possible to find, in this case. The new note was indorsed by the same parties and left at the bank, but the bank refusing to give up the first note for the second, the last two indorsements were erased and the note never discounted. On the 1st of December, 1855, the plaintiff was unable to meet the note that then became due, and the bank demanded of him additional security, and accordingly the plaintiff assigned to them as collateral certain notes for $1800 on five years, secured by mortgage. Ira Foster was not solvent at that time, and his means have remained more or less in supposition ever since. The plaintiff's securities were held by the bank as collateral, until December 19, 1861, when the plaintiff took them up with the note on paying the $980.21 for which this suit is brought. The plaintiff had remained liable to the bank up to the time he paid the note. The bank had regarded him responsible, and never allowed matters to get into such a situation that he could plead the statute of limitations.

The plaintiff never had any conversation or communication with the defendant about the note until long after he paid it; and the defendant never knew anything about the note after he signed the new note of December 1, 1855, but supposed it was taken up by the new note. He never made any acknowledgment or promise, either oral or written, to pay the note after it was given, other than by the giving of the note of December 1, 1855, to take up the old note.

Since December 1, 1855, the defendant has had no known property in New Hampshire, and has never resided there, but has occasionally been in Lancaster, Littleton, Claremont and Charlestown in New Hampshire, on business, but in no one of these places more than a day at a time. He has also been at Concord, N. H., once

in 1855, once in 1856, and two or three times since, but never to stop more than one night. He was never in the Mechanics' Bank, and the officers of the bank and the plaintiff had no actual knowledge of the defendant being in the state of New Hampshire on any of these occasions, but the defendant made no effort to keep out of their sight. The law of New Hampshire on the subject of the statute of limitations, so far as it may be material in this case, was proved, but as this appears in the statutes and reports of that state, the court, by the consent of the parties, did not state any finding upon questions of New Hampshire law, but left such questions, so far as they may be material, to be decided by the supreme court.

Upon these facts the court rendered judgment for the defendant to recover his costs. If judgment is reversed, final judgment is to be rendered then for the plaintiff for $980.21, and interest since December 19, 1861. Exceptions by the plaintiff.

*Jonathan Ross*, for the plaintiff, maintained that the statute of limitations did not commence to run on the plaintiff's claim till December 19, 1861. *Paine* v. *Webster*, 1 Vt., 101; *Keith* v. *Ware*, 2 Vt., 174; *Adams* v. *Clarke*, 14 Vt., 9; 2 Parsons on Bills, 637, note *b*; *Bullock* v. *Campbell*, 9 Gill, 182; *Barker* v. *Cassidy*, 16 Barb., 177; *Scott* v. *Nichols*, 27 Miss., 94; *Garrett* v. *Garrett*, 27 Ala., 687; *Rodman* v. *Hedden*, 10 Wend., 498. The payment by the plaintiff was in no sense a voluntary payment. 1 Parsons on Con., 393, 394. The plaintiff's relation to the note, so far as the defendant was concerned, was that of surety. A surety is not bound to avail himself of every defense to a note that the principal might. If he pays a note which the principal might avoid for usury, he can recover of the principal the sum paid. *Ford* v. *Keith*, 1 Mass., 139; *Johnson* v. *Johnson*, 11 Mass., 359. See also *Shaw et al.* v. *Loud*, 12 Mass., 447. The party may waive the statute of limitations as well as the statute of frauds. A contract affected by the latter statute is held valid when it comes in question collaterally. Brown on Frauds, 136; *Cahill* v. *Bigelow*, 18 Pick., 369. See also *Ainslie* v. *Wilson*, 7 Cowen, 662; *Prior* v. *Gentry*, 11 Geo., 300.

*George C. & George W. Cahoon*, for the defendant, maintained that the statute of limitations had run on this claim. 2 Kent's Com., 462, 463, and cases cited; Gen. Sts., 442, § 5, 443, § 15; *Russ, admr.*, v. *Fay*, 29 Vt., 386; *Hackett* v. *Kendall*, 23 Vt., 275; *Hall* v. *Nasmith*, 28 Vt., 791.

The plaintiff did not indorse the note at its inception and can in no sense be called a surety, and is liable only as an original guarantor. Story on Prom. Notes, 58, 59, and cases cited. *Van Staphorst* v. *Pearce*, 4 Mass., 258; 13 *Ib.*, 131; 2 Am. Lead. Cases, 437; *Pitts* v. *Congdon*, 2 Comst., 358; *Bishop* v. *Day et al.*, 13 Vt., 81; *Exr. of Baker* v. *Marshall et al.*, 16 Vt., 522; *Lapham* v. *Barnes et al.*, 2 Vt., 213; *Norton* v. *Downer*, 33 Vt., 26, and cases cited; *Lathrop* v. *Wilson*, 30 Vt., 604; Gen. Sts., 445, § 28; *Carlton et al.* v. *Ludlow W. M. Co.*, 27 Vt., 496.

The opinion of the court was delivered by

WILSON, J. This is an action of assumpsit, by which the plaintiff seeks to recover for money paid by him to the Mechanics' Bank, Concord, N. H., on the defendant's note, on which the plaintiff says he was liable as surety for the defendant. The defendant pleaded the general issue and the statute of limitations. The plaintiff replied to the plea of the statute of limitations, that the cause of action did accrue within six years.

I. The defendant claims that the liability of the plaintiff on the note was not that of surety, but that he was liable as an 'original promisor or guarantor of the note, and that he incurred that liability not by the request of the defendant. This proposition of the defendant is not warranted by the facts in the case. It appears that when this note was given, Ira Foster, the payee, and the defendant, Dudley B. Hall, were interested together in an unsettled partnership. Foster was accustomed to send notes to Hall and he would sign or indorse them, and the funds would be obtained at some bank, and be used in the company business or in the private business of either one, as might be agreed, and it was understood between them that the matter of these funds was to be left to be settled in the final adjustment of the partnership. The case states that the note in question was written at Concord,

and sent to Vermont, to Hall, who signed and returned it to Ira Foster, who procured the plaintiff and Albert Foster, without compensation and as an accommodation, to indorse it, and the bank purchased and became the owner of the note. The finding of the court below leaves no doubt that the note was given for the accommodation and benefit of the defendant as well as for Ira Foster, and that the liability incurred by the defendant to the plaintiff, by reason of the plaintiff's liability to the bank on the note, is precisely the same as it would be if the note had been executed and indorsed in the presence and at the request of both Ira Foster and the defendant, at the time it was given. Upon the facts of this case, it is quite clear that the liability of the plaintiff to the bank was that of surety for the defendant. It is insisted by the defendant's counsel that a recovery on the note against him, at the time the plaintiff made the payment, was barred by the statute of limitations, because it was more than six years from the time the note became due to the time of such payment by the plaintiff, and the defendant not having made any acknowledgement or promise within that time to pay the note. The note became due December 1, 1855, the defendant neglected to pay it, the plaintiff was unable to meet the note, and the bank demanded of him additional security, and accordingly the plaintiff assigned to them as collateral, certain notes for $1800, on five years, secured by mortgage, and those securities were held by the bank as collateral until December 19, 1861, when the plaintiff took them up with the note on paying the $980.21 for which this suit is brought. The county court found that the plaintiff had remained liable to the bank up to the time he paid the note, that the bank regarded him responsible, and never allowed matters to get into such a situation that he could plead the statute of limitations. The plaintiff's right of action at law, as surety for the defendant, accrued on payment of the note to the bank, which was within six years next before the commencement of this suit. *Bishop* v. *Day et al.*, 13 Vt., 81 ; *Exr. of Baker* v. *Marshall et al.*, 16 Vt., 522. It is further insisted by the defendant that the note, having been kept on foot, by an arrangement between him and the bank, for more than six years after it fell due, was not a

subsisting debt against the defendant at the time the payment was made by the plaintiff; and therefore the defendant claims it should be treated as a voluntary payment by the plaintiff, for which he ought not to recover of the defendant. But this position of the defendant is not sustained by the authorities cited by him. The case does not show that the delay of the plaintiff to pay the note was in fraud of the rights of the defendant, or that he was thereby in any manner prejudiced. It is not a case where the surety revived his own liability after it was barred by the statute of limitations. The defendant as principal and the plaintiff as surety were, on the 1st day of December, 1855, when the note became due, liable to pay it. The defendant should have paid the note and saved the plaintiff harmless. It was the duty of the defendant, at all times so long as the plaintiff remained surety by force of the liability incurred by signing or indorsing the note, to indemnify the plaintiff by paying the note. The neglect of the defendant to pay the note when it became due, compelled the plaintiff to give the bank additional security and to request further time of payment. All this was done while both plaintiff and defendant were liable to pay the note. The arrangement made between the bank and the plaintiff, as surety for the defendant, was one that could be properly made, and it is consistent with the original obligations and rights of the parties and with the relation of the plaintiff as surety for the defendant. The law will treat the arrangement so made by the plaintiff with the bank, in respect to said note and its payment, as having received the sanction of the defendant. The defendant, by his neglect to pay the note, left the matter of its payment to be arranged and made by the plaintiff, but the arrangement made between the plaintiff and the bank did not prevent the defendant from making payment to the bank at any time. It is clear, we think, that where the liability of the surety has, in good faith, continued more than six years from the time the note became due, and payment of the note is made by him, such continued liability of the surety carries with it the relation of principal and surety, and the liability of the principal to reimburse the surety for the money so paid by him. The defendant's liability to his surety, the plaintiff, was not barred

by the statute of limitations at the time the plaintiff paid the note, but as between these parties, the statute began to run on the plaintiff's claim when he paid the note, December 19, 1861.

· The judgment of the county court is reversed, and judgment for the plaintiff to recover the sum of $980.21 and interest since December 19, 1861, and his costs.